**Angelo FERRARO**
**vs.**
**John J. PATOTA**

**No. 309**

District Court/Bristol, ss.
Appellate Division/Southern District
Trial Court of the
Commonwealth of Massachusetts

**January 11, 1983**

## DECISION AND ORDER

This cause came on to and was heard in the Appellate Division for the Southern District sitting at Dedham upon Report from the District Court Department, Fall River Division and it is found and decided that there was prejudicial error.

It is hereby

ORDERED: That the Clerk of the District Court Department, Fall River Division make the following entry in said case on the docket of said Court, namely: JUDGMENT FOR DEFENDANT VACATED; CASE REMANDED TO THE TRIAL COURT FOR A NEW TRIAL.

Date: January 11, 1983

Richard O. Staff, Justice

Charles E. Black, Justice

Opinion filed herewith.

Patricia D. Minotti, Clerk

## OPINION

**Black, J.** This is an action brought on February 21, 1979, by the plaintiff, Angelo Ferraro, against the defendant, John J. Patota, to recover monies advanced toward the purchase of a corporation known as "Sal's Inc.," and for losses occasioned by the plaintiff's operating the business of the corporation.

The defendant failed to file a timely answer, and a default judgment was entered on May 4, 1979, with the execution being issued on May 17, 1979. On May 24, 1979, the defendant filed a Motion For Relief From Judgment, which was allowed on June 7, 1979. Judgment was vacated and the execution superseded. On that date, the defendant also filed a Motion To Join A Third Party Defendant, namely Milton R. Souza. This motion was allowed. The defendant, Patota, answered by denying the plaintiff's claim and by counter-claiming for rent, Federal and State taxes, and other operating expenses. The third-party defendant, Milton R. Souza, filed a Motion to Dismiss on August 7, 1979, which was denied on August 30, 1979.

A trial was held on December 18, 1979, at the close of which the plaintiff filed the

Richard P. St. Pierre, Esq., counsel for plaintiff.

Kenneth G. Littman, Esq., counsel for defendant.

* Judge Rider participated as a member of the panel which heard oral argument but retired prior to the promulgation of this Opinion.

following requests for rulings before final argument:

1. Plaintiff advanced to defendant the sum of $9,800 towards purchase of capital stock of corporation ($3,800 in cash and $6,000 by check). (Denied.)

2. That said agreement to purchase called for a transfer of stock free from all encumbrances. (Granted.)

3. That said stock was encumbered by tax liens at the time of said agreement until early 1974. (Granted.)

4. That said stock was never transferred to plaintiff. (Granted.)

5. That plaintiff acted as a mere custodian of the business during the period November 3, 1973 through December 28. 1973. (Denied.)

6. That plaintiff, on almost a daily basis, from November 7, 1973 through 1974 demanded a return of his advances. (Denied.)

7. As a matter of law, where defendant breached his agreement to transfer unencumbered stock, and never made any tender, plaintiff is entitled to a return of his deposit plus interest from the date of deposit. (Denied.)

8. As a matter of law, if plaintiff was custodian or agent of defendant in operating said business, plaintiff is due his losses in said operation. (Granted.)

During the trial, there was evidence tending to show that the plaintiff agreed to purchase the capital stock of Sal's Inc., a Massachusetts corporation apparently engaged in the restaurant business, from the defendant, Patota, free and clear from all encumbrances. The plaintiff paid the defendant $6,000.00 as a down payment for the said stock. Shortly thereafter, a U.C.C. recording was discovered in favor of a Mr. Souza (presumably the third-party defendant, although the record is not clear on the point), against the equipment of the restaurant, and another encumbrance in the form of a tax lien in favor of the Commonwealth of Massachusetts came to light. The tax lien had been imposed during the time when a previous owner was operating the restaurant. (Whether that owner was the defendant, Souza, or someone else is not stated in the report.) The defendant was ready, willing, and able to discharge all liens and encumbrances and offered to do so, but the plaintiff rejected the defendant's offer to remove all liens and encumbrances and insisted on the rescission of the sale.

The defendant never tendered or physically delivered the stock certificates of the corporation to the plaintiff, nor did he at any time transfer the liquor or common victualler's license to the plaintiff. Nevertheless, the plaintiff assumed control and the entire management of the business on November 3, 1973, the date on which the keys were turned over to the plaintiff, and until December 28, 1973, the plaintiff purchased all supplies required in the conduct of the restaurant business, paid rent to the defendant at the rate of $880.00 per month, paid the four employees of the business, and considered all receipts from the business as his own. As of December 28, 1973, the capital stock was encumbered, the encumbrance being removed by the defendant in February of 1974.

The court found for the defendant, Patota, and for the plaintiff, Patota, in the counterclaim. A Motion For A New Trial was then filed by the plaintiff. This motion was denied on June 23, 1981. An appeal was duly taken.

In our opinion, the decision of the trial judge cannot stand for a multitude of reasons. The first is the inconsistency between the court's apparent findings of fact and rulings of law. (Because several of the requested "rulings of Law" actually call for findings of fact, we treat the judge's actions thereon as his findings.) The trial judge found as a fact that the agreement between the parties called for a transfer of the corporate stock free and clear from all encumbrances, that the stock was encumbered by tax liens at the time of the agreement and remained so until early 1974, and that the stock was never transferred to the plaintiff. The court also found that the

parties intended that the sale be consummated and title pass on November 3, 1973. In light of these findings, it is difficult to understand the basis upon which the trial judge could rule that, as a matter of law, the plaintiff was not entitled to a return of his deposit. Parenthetically, it might be noted that ordinarily where there is an apparent discrepancy between the findings of fact and rulings of law, the matter should be brought to the attention of the trial judge by means of an appropriate motion in order to accord him an opportunity to reconsider the matter (see **Smith v. H. P. Hood & Sons, Inc.,** 52 Mass. App. Dec. 10, 15 (1973) ).

More importantly, perhaps, is the fact that implicit in the trial court's ruling No. 7 is what we perceive to be an erroneous ruling of law. Although the report of the trial judge (erroneously entitled "Draft Report") contains no discussion of the legal principles applied by the court in its finding for the defendant, the case clearly raises an issue on which we find no Massachusetts authority directly in point. That issue is whether the title to the corporation known as "Sal's Inc." could have passed without physical delivery of the stock to the plaintiff. In this connection, we note that G.L. c. 106, secs. 8-301 and 8-313, require physical delivery of the certificate of stock in order to effectively transfer ownership of a corporation. The defendant argues that the transaction in question is not governed by Article 8 of the U.C.C. since stock in a closely held corporation is not a "security" within the meaning of G.L. c. 106, sec. 102(1)(a). Although the trial judge did not address the question whether Sal's Inc., is a closely held corporation, it seems a fair inference that it was.

A review of case authorities in other jurisdictions discloses a split on the question whether stock in a close corporation is a "security" within the meaning of sec. 8-102(1)(a). Although the official text of sec. 8-102 was revised in 1977, the revised text appears to have been adopted only in Connecticut, Minnesota, and West Virginia. (See, T. Quinn, **Uniform Commercial Code Commentary and Law Digest,** 1982 Cum. Supp. No. 1 at S8-12). Massachusetts still has the 1973 version which defines a "security" as an instrument which (i) is issued in bearer or registered form; and (ii) is of a type commonly dealt in upon securities exchanges or markets or commonly recognized in any area in which it is issued or dealt in as a medium for investment; and (iii) is either one of a class or series or by its terms is divisible into a class or series of instruments; and (iv) evidences a share, participation or other interest in property or in an enterprise or evidences an obligation of the issuer."

The 1977 revision of sec. 8-102 introduces a distinction between "certificated" and "uncertificated" securities. The official comment to the new text states that "(i)nterests such as stock of closely-held corporations, although they are not actually traded upon securities exchanges, are intended to be included within the definitions of both certificated and uncertificated securities by the inclusion of interests 'of a type' commonly traded in those markets."

We note that there are some cases which hold that shares in certain close corporations are not "securities" within the meaning of sec. 8-102(1)(a). For example, in **Silverman v. Alcoa Plaza Associates,** 37 App. Div. 2d 166, 323 N.Y.S. 2d 39, 9 UCC Rep. 429 (1971), rev'g 8 UCC Rep. 57 (Sup. Ct. 1970), the Court held that cooperative apartment stock did not fall within the definition of sec. 8-102.

Similarly, where the defendant transferred title to his home from himself to a corporation of which he was the sole stockholder, the stock was held not to fall within the definitions in sec. 8-102(1), even though some stocks could be properly so classified. **Rhode Island Hosp. v. Collins,** 368 A.2d 1225, 21 UCC Rep. 619 (R.I. 1977). Also, in **Zamore v. Whitten,** 395 A2d 435, 25 UCC Rep. 1245

(ME 1978), the Court held that stock in a closely held family corporation is not a "security" because it is not commonly dealt in upon securities exchanges or market or recognized as a medium of investment. In Gulf Mortgage and Realty Investment v. Alten, 422 A. 2d 1090, 30 UCC Rep. 311 (Pa. Super. Ct. 1980), the court held that shares in a close corporation (a law firm) were not securities within sec. 8-102(1)(a) because they were not commonly dealt in upon securities exchanges or markets or recognized as a medium for investment.

The vast majority of courts, however, follow what we believe to be the better reasoned rule and hold that shares in a close corporation are "securities" within the meaning of sec. 8-102(1)(a). A federal bankruptcy court, although not bound in the particular case, in *In re Zamore v. Whitten* supra, severely criticized it and refused to apply it to shares that were not "family owned" before their transfer to the debtor. See *Kontaratos*, 10 B.R. 956, 31 UCC Rep. 1124, 1129-1131 (D. Me. 1981).

In Wamser v. Bamberger, 101 Wis. 2d 637, 305 N.W. 2d 158, 32 UCC Rep. 259 (1981), the Court held that stock of a single nature, commonly held, and issued in the seller's name as owner, of a small family-owned corporation, the transfer of which the seller had made a personal limitation that it would be sold to someone who would agree not to let everyone on the payroll of the corporation would use the business, was nonetheless a "security" under sec. 8-102(1)(a). The Court relied in part on the official comments to the 1977 revision. Similarly, in Kenney v. Porter, 557 S.W.2d 589, 22 UCC Rep. 1085 (Tex. Civ. App. 1977) the court reversing a grant of summary judgment held that the question whether stock in a family-owned corporation was a "security" was a matter of fact and on a bare appeal of the whole case, 604 S.W.2d 297 (Tex. Civ. App. 1980), upheld a jury determination that the closely held stock in question was a

"security" for purpose of Article 8. The Court, like the Wamser Court, also relied on the draftsmen's comments to the 1977 revision, although Texas had not adopted the 1977 amendment. Again in Gross v. Vogel, 437 N.Y.S.2d 431, 31 UCC Rep. 224 (App. Div. 1981), the Court held that the shares of stock in a close corporation are "securities" and that an employment contract exchanging services for shares of stock constituted a sales of securities within the meaning of sec. 8-319.

Shares in a closely held corporation that were in registered form and were dealt in as a medium of investment by some two dozen persons who had bought and sold the stock were also held to be "securities" under sec. 8-102 in Schultz v. Schultz, 31 UCC Rep. 1442 (Mo. Ct. App. 1981). We would note that the report in this case indicates that there was at least one previous owner of the restaurant. It is not stated whether this previous owner owned the stock in question. In Pantel v. Becker, 391 N.Y.S.2d 325, 21 UCC Rep. 274 (Sup. Ct. 1977), the Court ruled that stock in a closely held corporation did constitute "securities" under sec. 8-102(1)(a), stating, "(I)t might be argued that securities exchanges or markets seldom, if ever, deal in the stock of any corporation which has fewer than four stockholders and whose only substantial asset is a structure housing but two professional offices. However, even the adoption of this strained construction of the statute would not exclude this stock from the statutory definition because such stock is certainly commonly recognized by many people as a medium for investment." 21 UCC Rep. at 275. In another New York case, the Court said, "The definition of a security under sec. 8-102 was intended to include all shares of stocks not only those dealt with by security brokers and their customers. The fact that there may be limitations on the transfer of the stock is not material." Previti v. Rubenstein, 3 UCC Rep. 882, 883 (N.Y. Sup. Ct. 1966).

In an Oklahoma case, very similar to this one, the Court held that the capital

stock of a restaurant constituted "a security" within the meaning of the act. It is not clear from the opinion whether the stock was in a closely-held corporation, although it may be assumed that it was. **Fox v. Overton,** 15 UCC Rep. 483 (Okla. Ct. App. 1974).

The only Massachusetts case we are aware of that bears on the point is **E. H. Hinds, Inc. v. Coolidge Bank & Trust Co.,** 6 Mass. App. Ct. 5 (1978), in which the Court held that debentures issued by a bank to its directors and indorsed by them in blank and delivered to creditors as collateral security for loans were investment securities within the meaning of G.L. c. 106, sec. 8-102(1)(a), even though the debentures contained certain retirement restrictions. The Court said, "An instrument can qualify as a "security" under (G.L. c. 106, sec. 8-102(1)(a))(ii) even if it has never been traded on any securities exchange or market; the question is whether a particular instrument 'is of a **type'** which is commonly dealt in upon securities exchanges or markets or 'is of a **type'** commonly recognized as a medium for investment in any area in which it is issued or dealt in." **Id.** at 10 (emphasis in the original). Significantly, this case was cited by the Wisconsin Court in **Wamser, supra,** in support of its holding. 32 UCC Rep. at 286 n. 11. The comment to the 1977 revision, which clarifies the drafters' intent (albeit with hindsight) that closely held stock is a "security" within the meaning of the act, uses the same approach that the Appeals Court did in **E. H. Hinds, Inc.**

We also note that in **Donahue v. Rodd Electrotype Co. of New Eng., Inc.,** 367 Mass. 578, 586 (1975), the Supreme Judicial Court said that a close corporation was "typified by: (1) a small number of stockholders; (2) **no ready market for the corporate stock;** and (3) substantial majority stockholder participation in the management, direction and operations of the corporation." (Emphasis added.) Even if there is no **ready** market for the stock, it still may be "of a type commonly dealt in upon securities exchanges or markets **or commonly recognized** in any area in which it is issued or dealt in **as a medium for investment . . .**" sec. 8-102(1)(a)(ii) (emphasis added).

The analysis used in **E. H. Hinds, Inc.,** read in the light of the 1977 comment leads us to conclude that the shares here in question did constitute "securities" within the meaning of G.L. c. 196, sec. 8-102(1)(a). This conclusion is in accord with the weight of authority elsewhere.

Although there are other procedural matters that could be addressed, we believe it unnecessary to do so in light of our decision to order a new trial. We should point out, however, that the report fails to comply with Dist./Mun. Cts. R. Civ. P. 64(c)(2) in that it fails to state that it contains all the evidence material to the questions reported as required by the rule. While its omission is not necessarily fatal to consideration of the appeal (**Sutherland v. McGee,** 329 Mass. 530 (1952), **Comfort Air Systems, Inc. v. Cacopardo,** 370 Mass. 255 (1976) ), it is essential that the draft report state that it contains all the evidence material to the questions being reported. Otherwise, there is a possibility that evidence not in the report has in fact been introduced in the trial sufficient to justify a result opposite to that reached by the trial judge. Conversely, the result reached by the trial judge could be supported by evidence not reported (see **McGlinchey v. Tomasello,** 43 Mass. App. Dec. 206 (1969), **MacLellan v. Ace Recording Studios, Inc.,** 52 Mass. App. Dec. 143 (1973), **Haverhill Builders Supply, Inc. v. Ortins,** 58 Mass. App. Dec. 65 (1976), **Cincevich v. Patronski,** 304 Mass. 679 (1939) ).

The judgment for the defendant is vacated, and the case is remanded to the trial court for a new trial.

So ordered,

**Richard O. Staff, Justice**
**Charles E. Black, Justice**

This certifies that this is the Opinion of the Appellate Division in this cause.

**Patricia D. Minotti, Clerk**