422 A.2d 1090

**GULF MORTGAGE AND REALTY INVESTMENTS (Now Known as GMR Properties)**

**v.**

**Eugene J. ALTEN, James E. Meneses and Irving Pearlman, Appellants.**

**Appeal of James E. MENESES.**

Superior Court of Pennsylvania.

Argued March 10, 1980.

Filed Oct. 31, 1980.

Petition for Allowance of Appeal Denied Jan. 27, 1981.

Gregory J. Dean, King of Prussia, for appellants.

Stanley R. Krakower, Philadelphia, for appellee.

Before SPAETH, BROSKY and VAN der VOORT, JJ.

SPAETH, Judge:

This is an appeal from an order granting supplementary relief in aid of execution.[1]  The question presented is whether a judgment creditor may execute upon the shares of stock of a professional corporation.

On July 2, 1976, appellee, Gulf Mortgage and Realty Investments (now known as GMR Properties), entered judgment for $257,014.80 against appellant, James E. Meneses, and two other individuals, Eugene J. Alten and Irving Pearlman (now deceased).  On May 16, 1977, the lower court denied a motion to strike the judgment, and on June 28, 1978, we affirmed.  *See Gulf Mortgage and Realty Investments v. Alten*, 257 Pa.Super. 634, 390 A.2d 307 (1978).  On September 7, 1978, Gulf filed a praecipe for a writ of execution.  In the course of depositions in aid of execution, pursuant to Pa.R.C.P. 3117, Gulf discovered that appellant owned 75% of the stock of a Pennsylvania professional

1.  Pa.R.C.P. 3118.

corporation known as Meneses & Dean, P.C. On February 5, 1979 Gulf, filed a petition for supplementary relief in aid of execution, requesting the lower court to order appellant to "deliver to the Sheriff with appropriate endorsement, or otherwise make available for execution, the stock certificate representing [appellant's] ownership interest in Meneses and Dean, P.C." (R. 1a, 3a–4a) On September 12, 1979, the lower court granted Gulf's petition, "so that the Sheriff shall have possession of the share certificate or certificates standing in the name of Mr. Meneses. At that time, any person or corporation asserting a title or interest in the shares may file a property claim under Pa.R.C.P. 3258." (Slip op. at 4.) [2]

1

The petition for supplementary relief recited that one ground for the relief requested was Section 8–317 of the Uniform Commercial Code. Section 8–317 provides:

1. No attachment or levy upon a security or other share or other interest evidenced thereby which is outstanding shall be valid until the security is actually seized by the officer making the attachment or levy but a security which has been surrendered to the issuer may be attached or levied upon at the source.

2. A creditor whose debtor is the owner of a security shall be entitled to such aid from Courts of appropriate jurisdiction by injunction or otherwise, in reaching such security or in satisfying the claim by means thereof as is allowed at law or in equity in regard to property which cannot be readily attached or levied upon by ordinary legal process.

12A P.S. 8–317.

Section 8–102 of the Uniform Commercial Code defines "security" as follows:

A security is an instrument which

2. According to appellee's brief, the stock is being held by the Montgomery County Sheriff in a custodial safe deposit box in a bank in Blue Bell, Pa., and as of January, 1980, no claim under Rule 3258 had been filed. Rule 3258 specifies the form to be used by someone who wishes to notify the sheriff that property levied upon is his, not the defendant's.

> (i) is issued in bearer or registered form;  and
>
> (ii) is of a type commonly dealt upon securities exchanges or markets or commonly recognized in any area in which it is issued or dealt in as a medium for investment;  and
>
> (iii) is either one of a class or series or by its terms is divisible into a class or series of instruments;  and
>
> (iv) evidences a share, participation or other interest in property or in an enterprise or evidences an obligation of the issuer."

12A P.S. 8–102(1)(a).

■ It is apparent that the shares of Meneses and Dean, P.C., do not qualify as "securities" within this definition. As shares of a closely held professional corporation, they are not commonly dealt in upon securities exchanges or markets. Neither are they commonly recognized in any area in which they are issued or dealt in as a medium for investment. This is so for two reasons. First, Pennsylvania law restricts the issuance and transfer of shares of a professional corporation to persons licensed to practice the profession engaged in by the corporation. 15 P.S. § 2910, 2911. Second, the shares of Meneses and Dean are further restricted by a private agreement entered into by both members of the corporation. The agreement provides:

> 1. Each shareholder agrees that he will not transfer, assign, hypothecate, or in any way alienate any of his shares, or any right or interest therein, whether voluntarily or by operation of law, by gift or otherwise, unless in a transfer which meets the requirements of this Agreement. Any purported transfer in violation of any provision of this Agreement shall be void and ineffectual, and shall not operate to transfer any interest or title in the purported transferee, and shall give the company and the stockholders an option to purchase such shares in the manner and on the terms and conditions provided for herein.

Accordingly, we agree with appellant that Section 8–317 of the Uniform Commercial Code does not support the lower court's order.

2

The petition for supplementary relief recited that another ground for the relief requested was Pa.R.Civ.P. 3118. Rule 3118 provides:

Supplementary Relief in Aid of Execution

(a) On petition of the plaintiff, after notice and hearing, the court in which a judgment has been entered may, before or after the issuance of a writ of execution, enter an order against any party or person.

(1) enjoining the negotiation, transfer, assignment or other disposition of any security, document of title, pawn ticket, instrument, mortgage, or document representing any property interest of the defendant subject to execution;

(2) enjoining the transfer, removal, conveyance, assignment or other disposition of property of the defendant subject to execution;

(3) directing the defendant or any other party or person to take such action as the court may direct to preserve collateral security for property of the defendant levied upon or attached, or any security interest levied upon or attached;

(4) directing the disclosure to the sheriff of the whereabouts of property of the defendant;

(5) directing that property of the defendant which has been removed from the county or concealed for the purpose of avoiding execution shall be delivered to the sheriff or made available for execution; and

(6) granting such other relief as may be deemed necessary and appropriate.

(b) The petition and notice of the hearing shall be served only within the Commonwealth in the manner provided by Rules 233(a)(1) and 233(a)(2) and (b).

(c) Violation of the mandate or injunction of the court may be punished as a contempt.

a

█ Appellant argues that none of the subsections of Rule 3118 authorizes the court to enter an order directing the judgment debtor to turn over his shares in Meneses and Dean, P.C. to the sheriff. He further argues that the only conceivably applicable subsection is (a)(5), but that this subsection is not applicable because there was no evidence that the shares had been removed from the county or concealed for the purpose of avoiding execution. While we agree that there was no such evidence, we do not agree that no subsection of the rule authorized the lower court's order. In our opinion, subsection (a)(6), providing that the court may enter an order granting such relief as deemed necessary and appropriate, authorized the order.

It is recognized that "[t]he primary purpose of the supplementary relief afforded by Rule 3118 is to maintain or to restore the status quo with regard to property owned by the defendant or in which he has an interest." *Greater Valley Terminal Corp. v. Goodman*, 415 Pa. 1, 202 A.2d 89 (1964). By directing appellant to turn over his shares to the sheriff, the lower court presumably intended to prevent appellant from transferring the shares back to the professional corporation or to some other shareholder, or from otherwise assigning or disposing of the shares. A seizure is recognized as appropriate when dealing with shares that are securities within the Uniform Commercial Code. It is true, as just discussed, that appellant's shares are not such securities. Nevertheless, the considerations that support seizure of securities within the Code support seizure here:

The reason why 12A P.S. § 8–317 requires a party to seize securities in order to effect a valid attachment is to foreclose all possibility of the security finding its way into a transferee's hands after an attempted attachment has been made.

*Neifeld v. Steinberg*, 438 F.2d 423, 432 (3d Cir. 1971). Furthermore, a valid levy cannot be made unless the shares have been seized by a public officer:

In dealing with investment securities the instrument itself is the vital thing and therefore a valid levy cannot be made unless all possibility of the security finding its way into a transferee's hands has been removed. This can be accomplished only when the security has been reduced to possession by a public officer or by the issuer. ... See *Overlock v. Jerome Portland Copper Mining Co.*, 29 Ariz. 560, 243 P. 400 (1926). Therefore, ... the security itself must be reached to constitute a proper levy.

Uniform Commercial Code Comment, 12A § 8–317.

*See also Bell v. Feeney*, 41 Pa.D. & C. 486 (1941); *Deshong v. Cody*, 36 Pa.D. & C.2d 109 (1964).

Appellant argues, however, that he was denied the hearing required by Rule 3118. The difficulty with this argument is that there were no issues of fact for the lower court to resolve; appellant's answer admitted every relevant factual allegation in the petition for supplementary relief–specifically, the existence of the judgment and appellant's ownership and possession of the shares in Meneses and Dean, P.C.–only pleading that for various legal reasons, the relief requested should not be granted. Thus, as the lower court observed at the beginning of its opinion, the matter came before the court on the petition, rule and appellant's answer. (Slip op. at 1.) Appellant was of course entitled to present argument, but he does not say that this right was denied, and appellee's brief says that on May 25, 1979, the lower court heard argument. (Appellee's Brief at 14.) Rule 3118 does not require extended proceedings in aid of execution:

> The proceedings [required by Rule 3118(a)] are, however, summary rather than plenary .... Something less than a "full hearing" is envisioned by Rule 3118. Its proceedings are designed to be summary in nature, consonant with its primary function of maintaining the status quo or restoring it in the face of concealment by the defendant of property clearly his.

9 Goodrich Amram 2d § 3118(a): 2.1 (footnotes omitted.)

Given appellant's admissions, in his answer to the petition for supplementary relief, it was entirely appropriate for the

lower court to adopt summary proceeding of deciding the case on petition, answer, and oral argument. Appellant asserts that appellee should have offered evidence that the shares had been concealed or removed. Appellant's Brief at 9. Such evidence would have been immaterial; appellee made no claim of concealment or removal.

Accordingly, appellant's argument that Rule 3118 did not authorize the lower court to enter an order directing appellant to turn over his shares to the sheriff is without merit.

### b

Appellant argues, however, that the shares of a professional corporation are not subject to execution. According to appellant, this is so both generally, because of statutory restrictions, and specifically, because of the preincorporation agreement between the corporation and appellant as a shareholder.

### i

■ It is true that at common law, corporate shares of stock were not subject to levy and sale upon execution, for the reason that the property they represented was considered of "such a shadowy nature there was nothing capable of being physically seized . . . ." *Moys v. Union Trust Company*, 276 Pa. 58, 60, 119 A. 738 (1923). Today, however, all personal property is subject to seizure, unless specifically exempted, ordinarily by statutory enactment. *Brennan v. Pittston Brewing Corp.*, 344 Pa. 495, 26 A.2d 334 (1942); *Mamlin v. Genoe*, 340 Pa. 320, 17 A.2d 407 (1941); 9 Goodrich Amram 2d § 3102:1.2.

■ Appellant argues that the shares of a professional corporation are specifically exempted from levy and execution by the provisions of the Professional Corporation Law, Act of July 9, 1970, P.L. 461, No. 160, 15 P.S. § 2901 *et seq.*, restricting the issuance and transferability of the shares of a professional corporation. The Act provides as follows:

*Issue and retention of shares*

(a) Shares in a professional corporation may be issued only to a licensed person, and any shares issued in viola-

tion of this restriction shall be void. No shareholder of a professional corporation shall enter into a voting trust, proxy, or any other arrangement vesting another person (other than another licensed person who is a shareholder of same corporation) with the authority to exercise the voting power of any or all of his shares, and any such purported voting trust, proxy or other arrangement shall be void. . . .

15 P.S. § 2910.

### Transfer and purchase of shares

(a) Shares in a professional corporation may be transferred only to a licensed person or to such professional corporation, and any transfer in violation of this restriction shall be void . . . .

15 P.S. § 2911.

According to appellant, since neither appellee nor the sheriff is licensed to engage in the profession of Meneses and Dean, P.C. (the practice of law), neither has the right to seize and execute upon its shares. We do not understand the Act to cause such a result. Instead, we understand it to restrict the issuance and transfer of shares of a professional corporation, subject to the rightful claims of judgment creditors. Although the Act may prevent unlicensed persons from exercising control of shares obtained by judicial sale, it does not prevent the shares from being seized and sold to licensed persons or back to the corporation, or otherwise disposed of upon dissolution of the corporation.

This was the conclusion of the court of common pleas in *Lynch v. Lynch,* 105 Montg.Co.L.R. 108 (1978). In *Lynch* the judgment debtor was a licensed physician employed by a professional corporation of physicians, Dooley–Lynch Associates. The debt arose from a judgment entered in a property dispute in favor of the physician's former wife. The physician's former wife filed a writ of execution against the stock of the professional corporation by which the physician was employed. In support of a petition for stay of the writ, the physician contended that

since less than one percent of the population of the Commonwealth are *[sic]* qualified to own such shares, an execution sale of the stock to qualified bidders would not be a public sale. Furthermore, if the stock was sold to anyone other than a licensed physician, the statute provides that such sale would be void and the corporation would be forced to dissolve.

105 Montg.Co.L.R. at 109.

The court found this potential harm to the professional corporation outweighed by "the public policy which requires that debtors of sufficient means to pay their just debts." The court added that even if the shares were sold to a non–physician or to a physician with whom the other members of the association chose not to practice, the remaining physicians would be able to form a new corporation, including the judgment debtor.[3]

The court in *Lynch* relied heavily on *Street v. Sugerman,* 202 So.2d 749 (Fla.1967). In *Street,* the judgment creditor executed upon shares owned by two members of a professional corporation composed of three attorneys. The trial court enjoined the sale. The Florida District Court of Appeals reversed and certified the case to the Florida Supreme Court. The judgment debtor argued that a Florida statute restricting ownership of shares in a professional corporation to persons legally authorized to render the same professional services as those to render which the corporation was incorporated created an exemption from the general law permitting execution of shares in a corporation.[4] The Supreme Court held that this statutory restriction did not preclude execution:

... [t]he fact that the corporation may not voluntarily "issue" or the shareholders may not "sell or transfer" their stock voluntarily to a non–professional is not reason to

---

**3.** According to the Montgomery County Law Reporter, this case was appealed to our court on Sept. 13, 1978. However, neither the prothonotary of the lower court nor our prothonotary has a record of such an appeal. The records of the lower court indicate that the judgment has been satisfied.

**4.** F.S.A. § 621.09, § 621.11.

prevent an execution and sale, *by law* for a judgment creditor . . . . The privilege of incorporation was most definitely not created or extended in order that those availing themselves of the benefits could be cloaked with an immunity inimical to legal order and public interest. Thus, it is our judgment that Chapter 621, Florida statutes, does not serve to prevent an execution and sale, by law, of shares of stock in a professional service corporation for satisfaction of a judgment creditor.

202 So.2d at 750–51 (emphasis in original).

The court also stated that to allow shares of a professional corporation to be "execution proof" would be to

. . . afford professionals a shelter for their assets, which appears to be inconsistent with the spirit of the Act . . . [and would] carve out a judicial "no man's land" for shareholders in a professional corporation which is not available to shareholders in non–professional groups.

*Id.*

The court added that should some one not an attorney obtain control of shares of a professional corporation upon levy and judicial sale, the corporation could be dissolved and thus prevent noncompliance with statutory restrictions.

Our research reveals another case in which a New York court held that a statute restricting issuance and transfer of the shares of a professional corporation did not preclude the court from directing a judgment debtor to turn over the shares to the sheriff in satisfaction of an unpaid judgment. In *Udel v. Udel*, 82 Misc.2d 882, 370 N.Y.S.2d 426 (1975), the judgment debtor was a psychiatrist who had incorporated his practice as a professional corporation. The psychiatrist owed his former wife a judgment of $9,931.40 for arrears in alimony. The court refused to find his shares exempt from execution, stating that " . . . a professional corporation, like any other corporation cannot be used as a subterfuge to avoid payment of a personal judgment." 82 Misc.2d at 884, 370 N.Y.S.2d at 428.

Appellant argues that the foregoing cases are distinguishable in that none involved a professional corporation that had made a private agreement further restricting the transfer of its shares, as did Meneses and Dean, P.C. Appellant refers to an agreement entered into on December 8, 1976, five months after judgment was entered against him. The agreement provides as follows:

... WHEREAS, it is the desire of the parties hereto [*i. e.,* the corporation, appellant, and Gregory J. Dean] to regulate the transfer in the shares of stock and to place restrictions upon said transfers,

NOW THEREFORE, in consideration of the foregoing, it is hereby contracted and agreed by the parties hereto as follows:

1. Each Shareholder agrees that he will not transfer, assign, hypothecate, or in any way ailenate [*sic*] any of his shares, or any right or interest therein, whether voluntarily or by operation of law, by gift or otherwise, unless in a transfer which meets the requirements of this Agreement. Any purported transfer in violation of any provision of this Agreement shall be void and ineffectual, and shall not operate to transfer any interest or title in the purported transferee, and shall give the company and the stockholders an option to purchase such share in the manner and on the terms and conditions provided for herein.

Appellee's Brief, Appendix "A".

In general, such restrictions on the transfer of corporate shares are valid and enforceable in Pennsylvania. *Beggy v. Deike,* 413 Pa. 74, 196 A.2d 179 (1963); *Mather Estate,* 410 Pa. 361, 189 A.2d 586 (1963); *DeVries v. Westgren,* 119 P.L.J. 61, *modified on other grounds,* 446 Pa. 205, 287 A.2d 437 (1970). The Business Corporation Law provides:

A written restriction on the transfer of a share or other security of a business corporation, if permitted by this

section and noted conspicuously on the security, may be enforced against the holder of the restricted security or any successor transferee of the holder including an executor, administrator, trustee, guardian or other fiduciary entrusted with like responsibility for the person or estate of the holder.

15 P.S. § 1613.1.

However, while a pre–incorporation agreement may be enforced among members of the corporation and its shareholders, it does not preclude the court from ordering delivery of the shares to the sheriff for execution. As stated by the Florida District Court of Appeals in *Street*, which was affirmed by the Florida Supreme Court:

The judgment herein was obtained on December 12, 1963; the professional association was formed January 10, 1964, and a levy was made about February 11, 1965. On February 5, 1965, the charter of the corporation was amended to prevent a sale of the stock, except under Section 621.11 [of the Professional Service Corporation Act], stating that the shares were not subject to sale and execution, and requiring the directors to amend the by laws to reflect these prohibitions. A self–created amendment of the charter attempting to restrict a levy and execution sale of such stock is improper, in our opinion . . . .

198 So.2d 57, 59–60 (District Court of Appeals, 3d Distr., 1967).

As in *Street*, the private agreement restricting stock transfers in the present case was entered into after the entry of judgment against the defending shareholder. To permit the members of a professional corporation by private agreement to declare their shares exempt from execution on a judgment already entered against a shareholder would be to invite other judgment debtors who are members of professional corporations to evade their legal obligations simply by marshalling their assets in a professional corporation with an agreement to restrict share transfer. This would be

clearly contrary to the public policy that debtors should pay their debts.

Affirmed.[5]

**5.** Our order does not dispose of the issue of who may be ultimately entitled to the shares of Meneses & Dean, P.C., but leaves determination of that issue to future proceedings. *See* Pa.R.C.P. 3201–3216; Pa.R.C.P. 3246.