(737 P.2d 65)
No. 59,348

CENTRAL STATE BANK, *Appellee*, v. BRUCE W. ALBRIGHT, *Appellant*.

Opinion filed May 21, 1987.

*Michael B. Myers*, of Hiatt & Carpenter, Chartered, of Topeka, for the appellant.

*Thomas A. Dower* and *Patricia Rose Myers*, of Reynolds, Peirce, Forker, Suter, O'Neal & Myers, of Hutchinson, for the appellee.

Before MEYER, P.J., REES and PARKS, JJ.

PARKS, J.: Plaintiff, Central State Bank (Bank), brought this action to foreclose on five shares of stock in a professional corporation which it held as security on a loan made to defendant, Bruce W. Albright. Both parties moved for summary judgment and the Bank's motion was granted. Defendant Albright appeals.

In 1969, Dr. H.B. Thompson incorporated his dental practice under the name H.B. Thompson, D.D.S., Chartered. In 1982, Thompson entered into an agreement with defendant, who is also a dentist, for the sale of a one-half interest in the professional corporation. The two dentists executed a stock purchase agreement which provided that on June 1, 1983, defendant would obtain five shares of stock in the corporation, representing a fifty percent ownership of the outstanding stock, in return for certain monthly payments. In the event defendant defaulted on the future payments, the agreement stated defendant would forfeit all rights under the agreement and would sell any shares already transferred to him back to Thompson. The name of the corpora-

tion changed to H.B. Thompson, D.D.S., B.W. Albright, D.D.S., P.A.

On November 25, 1983, defendant borrowed $50,000 from the Bank. Defendant executed a promissory note in favor of the Bank and, at the request of the Bank, gave as collateral an assignment of a stock certificate representing his ownership of five shares in the corporation. On December 12, 1984, defendant defaulted on the stock purchase agreement with Thompson. Defendant and his wife later filed for bankruptcy and were granted a discharge of their indebtedness, including defendant's debt to the Bank, on May 30, 1985. The Bank then filed this action to foreclose on the collateral.

Both parties filed statements of uncontroverted facts and sought summary judgment. Defendant contended that the foreclosure would violate the law regarding the transfer of shares in the stock of a professional corporation, in particular, K.S.A. 17-2712. The trial court rejected defendant's arguments and granted summary judgment to the Bank.

Professional corporations are a special type of corporation devised to permit members of certain professions the opportunity to practice together and enjoy the tax and other advantages of the corporate form. However, legislation extending the power to incorporate to professionals seeks to assure that corporate control will remain with persons bound by professional standards and ethics. 1A Fletcher, Cyclopedia of the Law of Private Corporations § 112.1 (rev. perm. ed. 1983). Thus, the general laws regarding corporations apply to professional corporations, except to the extent provided otherwise by the specific provisions of the professional corporation law. K.S.A. 17-2708. Ordinarily, shares of stock in a corporation are deemed to be personal property freely transferable according to the terms of article 8 of the Uniform Commercial Code (U.C.C.). K.S.A. 1986 Supp. 17-6409. However, the ownership and transferability of stock in a professional corporation is restricted by K.S.A. 17-2712, which provides as follows:

"(a) A professional corporation may issue the shares of its capital stock only to a qualified person. A shareholder may voluntarily transfer his shares in a professional corporation to the corporation or to a qualified person with the prior written consent of the corporation unless the articles of incorporation otherwise

provide. No shares may be transferred upon the books of the professional corporation or issued by the professional corporation until there is presented to and filed with the corporation a certificate by the regulating board stating that the person to whom the transfer is to be made or the shares issued is duly licensed to render the same type of professional services as that for which the corporation was organized. No shareholder shall enter into any voting trust agreement, proxy, or any other type of agreement vesting another person, other than another shareholder of the same corporation, with authority to exercise the voting power of any or all of his stock. The issuance or transfer of any shares and any proxy, voting trust or other agreement made in violation of this section shall be null and void. Every certificate of stock issued by a professional corporation shall contain substantially the following provision: 'The ownership and transfer of this stock and the rights and obligations of stockholders are subject to the limitations and provisions of the professional corporation law of Kansas.'

"(b) The Kansas securities law (Kansas Statutes Annotated, chapter 17, article 12) shall not be applicable to nor govern any transactions relating to any shares of a professional corporation."

A "qualified person" to whom shares of a professional corporation may be issued or transferred is defined as follows:

"(d) 'Qualified person':

(1) Any natural person licensed to practice the same type of profession which any professional corporation is authorized to practice; or

(2) the trustee of a trust which is a qualified trust under subsection (a) of section 401 of the internal revenue code of 1954, as amended, or of a contribution plan which is a qualified employee stock ownership plan under subsection (a) of section 409A of the internal revenue code of 1954, as amended." K.S.A. 1986 Supp. 17-2707(d).

Defendant contends that since the Bank is not a qualified person under K.S.A. 1986 Supp. 17-2707(d), the transfer attempted by the execution of the security agreement should be "null and void" under K.S.A. 17-2712. Thus, defendant argues the Bank holds no collateral as security on his discharged indebtedness which would be subject to foreclosure. The Bank contends that it simply seeks to enforce its security interest in an "instrument" pursuant to the law of secured transactions and that no transfer of the professional corporation stock was attempted by the security agreement. The trial court granted the foreclosure and held that the grant of a security interest by a qualified person in professional corporation stock to a lending institution in exchange for a loan is not in violation of K.S.A. 17-2712. The court further concluded that the stocks were not "issued" to the Bank nor was this a voluntary transfer of the stock to the Bank.

While the court stated that the Bank may be limited in any transfer it may make of the foreclosed stock, it held the foreclosure itself was not contrary to the law.

Initially, it is important to point out that this is not a case in which a judgment creditor seeks to levy execution on professional corporation stock. See, *e.g.*, *Street v. Sugarman*, 202 So.2d 749 (Fla. 1967); *Gulf Mtg. & Rlty. Investments v. Alten*, 282 Pa. Super. 230, 422 A.2d 1090 (1980). Rather, plaintiff seeks an order permitting it to sell stock pledged as security for a loan. Thus, the precise issue in this case is whether a lender may be granted an enforceable security interest in professional corporation stock.

K.S.A. 17-2712 permits the voluntary transfer of professional corporation stock to a qualified person with the written permission of the corporation. By implication, it prohibits the voluntary transfer of stock to a person who is not qualified by stating that transfers in violation of the statutory restrictions shall be null and void. Therefore, we must determine whether the legislature intended to depart from the ordinary rule permitting the creation of security interests in corporate stock by restricting the voluntary transfer of professional corporation stock.

The word "transfer" is generally given an expansive meaning including any transaction whereby the property or interest of one person becomes the property or interest of another. *Fairlawn Plaza Development, Inc. v. Fleming Co., Inc.*, 210 Kan. 459, 464, 502 P.2d 663 (1972). The language of the Bank's security agreement characterized the nature of the transaction as a transfer of interest with the following language:

"For the purpose of securing the payment of this note, and all other liabilities of the undersigned to said Bank now or hereafter existing, the undersigned hereby pledge(s), transfer(s), and deliver(s) the property hereinafter described, and grant(s) a security interest in favor of the Bank therein, . . . ."

The general corporation provision recognizing the transferability of corporate stock distinguishes between the transfer of stock as collateral security and the absolute transfer of stock ownership by stating as follows:

"The shares or stock in every corporation shall be deemed personal property and transferable as provided in the acts contained in article 8 of chapter 84 of the Kansas Statutes Annotated. Whenever any transfer of shares shall be made for collateral security, and not absolutely, it shall be so expressed in the entry of the

transfer if, when the transfer is registered, both the transferor and transferee request the corporation to do so." K.S.A. 1986 Supp. 17-6409.

K.S.A. 1986 Supp. 17-6409 and its predecessor provisions term both the creation of a security interest in corporate stock and an absolute change in ownership a "transfer" of the stock. Moreover, the terminology of article 8 of the U.C.C. characterizes a secured transaction involving corporate stock as a transfer and provides that the security interest does not attach until the transfer takes place. K.S.A. 1986 Supp. 84-8-321. It is a well recognized rule of statutory construction used to determine legislative intent that ordinarily identical words or terms used in different statutes on a specific subject are interpreted to have the same meaning in the absence of anything in the context to indicate that a different meaning was intended. *T-Bone Feeders, Inc. v. Martin,* 236 Kan. 641, 648, 693 P.2d 1187 (1985). Therefore, the restrictions on "transfers" of professional corporation stock contained in K.S.A. 17-2712 must have been intended to restrict the transfer of stock for the purpose of creating a security interest regardless of whether the shares of a professional corporation could be characterized under the U.C.C. as "instruments" (K.S.A. 1986 Supp. 84-9-105[i]) or "general intangibles" (K.S.A. 84-9-106).

Since the attempted transfer took place when defendant granted the security interest in a consensual loan transaction with the Bank, the transfer was voluntary. The fact that the Bank sought to enforce the rights it was granted by the security agreement through foreclosure does not convert the earlier transfer voluntarily made by defendant into an involuntary act. Thus, the grant of the security interest in the stock certificate issued by the professional corporation was an attempt to voluntarily transfer the shares to an unqualified person and, according to K.S.A. 17-2712, "shall be null and void."

The Bank contends that despite the language of K.S.A. 17-2712, K.S.A. 17-2719 indicates that an unqualified person may own shares of a professional corporation and that it is the corporation rather than the unqualified shareholder which must bear the consequences of the transfer. K.S.A. 17-2719 does indeed recognize that there may be situations in which an unqualified person becomes a shareholder; the provision indicates that a

professional corporation will forfeit its certificate of incorporation if any shares of the corporation have been owned by an unqualified person for more than one year without action being taken to fix the value of the shares in the manner provided by K.S.A. 17-2714. However, the mere fact that an unqualified person may become a shareholder does not contradict the clear statement of K.S.A. 17-2712 that *voluntary transfers* to an unqualified person shall be null and void since an involuntary transfer could also result in ownership by an unqualified person.

K.S.A. 17-2714 provides the means by which the value of shares may be fixed so that the corporation or its shareholders may repurchase shares when they fall to an unqualified person by virtue of the death or disqualification of a shareholder. Thus, the statute provides a means of preserving the restrictions on the ownership of professional corporation shares when an *involuntary transfer* prompted by the death or disqualification of the previous owner takes place. In such a circumstance, an unqualified person may become the owner of the stock as a result of an involuntary transfer but K.S.A. 17-2712 does not, by its own terms, apply. By contrast, when, as here, a voluntary transfer to an unqualified person is attempted, the transfer itself is void.

We conclude that the trial court erred in granting summary judgment to the Bank. The attempt to obtain a security interest in the shares of stock in this professional corporation was void as a voluntary transfer to an unqualified person under K.S.A. 17-2712. Since the defendant's debt was discharged in bankruptcy and the transfer of the shares to the Bank as security was voluntary and invalid under K.S.A. 17-2712, the Bank held no collateral upon which it could foreclose.

Reversed.