Edward A. RICHE, Plaintiff
and Respondent,

v.

NORTH OGDEN PROFESSIONAL COR-
PORATION, a Utah professional corpo-
ration, Defendant and Appellant.

No. 860099–CA.

Court of Appeals of Utah.

Oct. 27, 1988.

Pete N. Vlahos, Ogden, for defendant
and appellant.

John P. Sampson, Ogden, for plaintiff
and respondent.

Before ORME, GARFF and
DAVIDSON, JJ.

OPINION

ORME, Judge:

Defendant, North Ogden Professional
Corporation, appeals from a district court
judgment ordering its dissolution. The cor-
poration seeks reversal of the judgment
and enforcement of its claimed right to
redeem certain shares of its stock held by
plaintiff Edward Riche. We affirm.

FACTS

On June 8, 1970, three medical doctors,
Dr. Richard Nilsson, Dr. Chauncey Mi-
chaelson, and Dr. David Paul, formed de-
fendant corporation under the Utah Profes-
sional Corporation Act. Utah Code Ann.
§§ 16–11–1 to –15 (1987). The corporation's
articles of incorporation authorized the is-
suance of 50,000 shares of stock with a par
value of $1.00 per share. The corporation

issued 1,000 shares to Dr. Nilsson, 1,000 to Dr. Michaelson, and 10 shares to Dr. Paul. The articles of incorporation restricted the transfer of stock, permitting transfer only to other members of the medical profession. On July 1, 1970, the shareholders and the corporation entered into a stock redemption agreement, which also restricted the transfer of stock and gave the corporation a right of first refusal should any shareholder desire to dispose of his stock and the option to repurchase its stock at par value in the event of the death of a shareholder or upon a shareholder's termination of employment by the corporation.

Dr. Nilsson became involved in several unsuccessful investments, culminating in his filing for bankruptcy in 1976. On November 20, 1981, the bankruptcy trustee applied to the bankruptcy court for authorization to sell Dr. Nilsson's 1,000 shares of stock in the corporation to Dr. Michaelson for $1,000. This amount represented the par value of the shares and the amount for which the corporation would be entitled to redeem the shares, pursuant to the stock redemption agreement, in the event it were entitled to redeem. Riche, a creditor of Dr. Nilsson holding a judgment for $120,-000.00, objected and asked the bankruptcy court to require the trustee to force a dissolution of the corporation so that Dr. Nilsson's bankruptcy estate could receive his share of the total assets of the corporation.

The bankruptcy court rejected both suggestions. Instead, the court authorized a sale of the stock to the highest bidder and, on August 12, 1982, conducted a sale of the stock. The bidding proceeded in stages until Riche bid $2,600 and Dr. Michaelson refused to make a higher bid. The court authorized the sale of Dr. Nilsson's shares to Riche for that amount. In doing so, the bankruptcy court in no way ruled on the validity of the transfer or value of the stock and expressly made the sale "subject to" any applicable restrictions in the stock redemption agreement and articles of incorporation and all applicable provisions of state law.

Upon sale of the stock to Riche, the corporation tendered $1,000 to Riche, the par value of the shares of stock purchased from the trustee, in contemplation of the stock redemption agreement. Riche rejected the tender and made demand upon the corporation for the issuance of the 1,000 shares of stock, redemption of his shares in the corporation for their fair market value, a corporate financial statement, and an opportunity to inspect a copy of the corporate minutes, bylaws, and articles of incorporation. The corporation refused to comply with Riche's demands and reiterated its perceived right to repurchase the stock at par value.

Riche then filed an action in district court pursuant to Utah Code Ann. § 16–11–13 (1987), which provides that, absent a redemption provision to the contrary, a professional corporation has 90 days within which to purchase the shares of a disqualified shareholder at their "reasonable fair value." Absent such purchase, an action may be filed to obtain the "reasonable fair value" of the shares or the corporation's dissolution. *Id.*

Following trial, the court found that once Riche purchased all the rights, title, and interest that Dr. Nilsson's bankruptcy estate had in the 1,000 shares of stock, Riche was entitled, under both the stock redemption agreement and § 16–11–13, to have his shares redeemed for their reasonable fair value. The court found that dissolution was the only viable solution. It ordered defendant corporation to be immediately dissolved and to have all its assets marshalled, its legal liabilities paid, and the balance of its assets distributed to the shareholders in the same ratio as their respective stock ownerships. The court also entered judgment against the corporation for reasonable attorney fees as required by the statute. *See id.*

On appeal, the corporation argues that the court erred in ordering its dissolution because it had a right to redeem its stock pursuant to the stock redemption agreement and its articles of incorporation. It claims that Riche, as someone who is not a member of the medical profession, was entitled to $1,000, the par value of the shares,

and not the reasonable fair value of the shares.

The corporation also argues that § 16–11–13 only applies in the absence of a private agreement and that since the corporation provided for the redemption of shares in its stock repurchase agreement, the statute is inapplicable.[1]

## STOCK REDEMPTION AGREEMENT

The court found that Riche purchased the stock subject to the provisions of the stock redemption agreement. The court noted that the agreement protected the doctors from undesirable associates, namely non-doctors, by prohibiting the sale or transfer of stock to anyone who was not a member of the medical profession. However, the court found the redemption agreement to be ambiguous in at least two respects:[2] (1) It did not define the redemption price in that "par value" was not given a numerical value in the agreement, and (2) its elaborate provisions governing notices and procedures were "wholly inconsistent with valuing Dr. Nilsson's interest at only $1,000"; therefore, the parties must not have really meant "par value" in the technical sense with respect to the redemption arrangement contained in the agreement. We disagree.

■ As to the first point, the Utah Business Corporation Act provides that the articles of incorporation shall set forth the classes of shares and state their par value. Utah Code Ann. § 16–10–49 (1987). The Professional Corporation Act provides that "articles of incorporation shall meet the requirements of the Utah Business Corporation Act." Utah Code Ann. § 16–11–4

(1987). Therefore, under the Professional Corporation Act read in conjunction with the Utah Business Corporation Act, defendant's articles of incorporation would be the appropriate vehicle for defining the par value of the stock. The definition of par value in the corporation's articles is, in effect, incorporated into the stock redemption agreement.[3] The stock redemption agreement was not ambiguous with respect to the meaning of par value since "par value" is a term of art and the document which should state par value did so unambiguously.

As to the second point, we frankly do not find in the agreement "extensive notices" or "procedural steps" which are in any way inconsistent with "par value" meaning par value. It is true the agreement gives the corporation the option of paying the par value redemption over the course of a year, which seems peculiar in the instant case where only $1,000 would arguably be payable. However, the articles authorized the issuance of 50,000 shares. A schedule of payments seems unnecessary if the corporation need pay only $1,000 to redeem, but it would be quite important if all the authorized stock were issued and $25,000 or so had to be paid to redeem a shareholder's stock. This possibility, not an aberrant notion of "par value," appears to explain this provision. Nor has Riche called to our attention any evidence that would support the trial court's conclusion that the corporation really meant something other than par value when it used that term in the stock redemption agreement.

It does not follow, however, that the court's judgment was in error. For reasons somewhat different than those relied

1. Each party also asserts statute of limitations arguments against the other. We agree with the trial court that these contentions are without merit.

2. When a contract is ambiguous and the trial court proceeds to find facts respecting the intention of the parties based on extrinsic evidence, our review is limited, *Kimball v. Campbell,* 699 P.2d 714 (Utah 1985), and we will not disturb the findings and judgment so long as they are based on "substantial, competent, admissible evidence." *Car Doctor Inc. v. Belmont,* 635 P.2d 82, 83–84 (Utah 1981). However, the threshold

question of whether or not a contract actually is ambiguous is a question of law. *Faulkner v. Farnsworth,* 665 P.2d 1292, 1293 (Utah 1983).

3. Whenever "two or more instruments are executed by the same parties contemporaneously, or at different times in the course of the same transaction, and concern the same subject matter," courts should interpret them "together so far as determining the respective rights and interests of the parties, although they do not in terms refer to each other." *Bullfrog Marina, Inc. v. Lentz,* 28 Utah 2d 261, 501 P.2d 266, 271 (1972).

on by the trial court, its judgment is readily sustainable.[4]

## STOCK RESTRICTIONS

Professional corporations are unique in some respects.[5] They are designed to allow "members of certain professions the opportunity to practice together and enjoy the tax and other advantages of the corporate form." *Central State Bank v. Albright*, 12 Kan.App.2d 175, 737 P.2d 65, 66–67 (Ct.App.1987). *See* Utah Code Ann. § 16–11–3 (1987). "[L]egislation extending the power to incorporate to professionals seeks to assure that corporate control will remain with persons" licensed in the profession, and bound by the same professional standards and ethics, by restricting the sale or transfer of stock to members of the profession. *Central State Bank v. Albright*, 737 P.2d at 67.

In this case, state law, the corporation's articles, and the stock redemption agreement all prohibit the transfer of shares in the corporation to persons not licensed in the medical profession. Section 16–11–7 of the Utah Professional Corporation Act provides:

> A professional corporation may issue the shares of its capital stock only to persons who are duly licensed to render the same specific professional services as those for which the corporation was organized. A shareholder may *voluntarily* transfer his shares in a professional corporation only to a person who is duly licensed to render the same specific professional services as those for which the corporation was organized. Any shares issued in violation of this section are void.

Utah Code Ann. § 16–11–7 (1987) (emphasis added).

Likewise, the corporation's articles of incorporation provide:

> The· transfer and conveyance of this stock shall be restricted in that such stock may be issued, sold or transferred only to a person or persons who are duly licensed to render medical services; any other transfer or issuance of shares shall be void.

The corporation's stock repurchase agreement contains an equivalent restriction.

■ Although the statute, the articles, and the agreement prohibit the transfer of stock to anyone who is not a member of the medical profession, these prohibitions did not preclude the transfer in this case. Restrictions on the sale of corporate stock are held to apply only to "voluntary" transfers. *See, e.g., Castonguay v. Castonguay*, 306 N.W.2d 143, 145 (Minn.1981) (stock restrictions did not apply to court-ordered assignment pursuant to judgment of divorce). Indeed, this doctrine has apparently been incorporated in § 16–11–7, quoted above, which expressly refers only to voluntary transfers.

The same result is reached in this case by giving the corporation's stock repurchase agreement its plain meaning. The agreement does not even purport to restrict involuntary transfers of stock, such as the one in the instant case which occurred pursuant to a court-ordered trustee's sale. *See Durkee v. Durkee-Mower, Inc.*, 384 Mass. 628, 428 N.E.2d 139, 142 (1981). The restrictions in the stock redemption agreement only concern (1) transfers upon the death of a shareholder and (2) voluntary transfers during life. The agreement simply does not address involuntary transfers during life.[6] "[T]he scope

**4.** *See, e.g., Buehner Block Co. v. UWC Assocs.*, 752 P.2d 892, 894–95 (Utah 1988).

**5.** This court recently confronted another aspect of their uniqueness, which results from the Professional Corporation Act's "purpose of making available to professional persons the benefits of the corporate form for the business aspects of their practices while preserving the established professional aspects of the personal relationship between the professional person and those he serves." Utah Code Ann. § 16–11–3 (1987). *See Stewart v. Coffman*, 748 P.2d 579 (Utah Ct.App.

1988) (shareholder in law firm organized as professional corporation not vicariously liable for malpractice committed by another shareholder unless personally involved in malpractice). Although the Court's order or some notice thereof has not been published, we are advised the Utah Supreme Court has granted certiorari in *Stewart v. Coffman.*

**6.** Accordingly, we need not reach the question of whether, and to what extent, intended restrictions on involuntary transfers might be enforceable.

of the restriction cannot be greater than its actual language." *Durkee v. Durkee-Mower, Inc.*, 384 Mass. at 128, 428 N.E.2d at 142. Accordingly, "[w]e refuse to expand the clear and unambiguous language of the corporate stock restriction and hold it applicable to a situation not provided for when drafted." *Id.*

Once a disqualified person,[7] like Riche, acquires stock by an involuntary transfer, the usual remedy is to compel dissolution of the corporation pursuant to the applicable statute. *See generally Gulf Mortgage & Realty Investments v. Alten*, 282 Pa.Super. 230, 422 A.2d 1090, 1095–96 (1980).

### STATUTORY SCHEME

██  A professional corporation may provide, through its articles of incorporation, bylaws, or private agreement, for the repurchase or redemption of shares upon the death or disqualification of a shareholder. Utah Code Ann. § 16–11–13 (1987). In the absence of such a provision, the repurchase or redemption of shares must be accomplished pursuant to the statutory scheme provided in § 16–11–13.

In this case, the corporation's articles merely recited that the statutory scheme would govern in the event of death or disqualification of a shareholder. However, the corporation subsequently entered into an agreement providing for the redemption at par value of shares held by a shareholder at death or upon a shareholder's termination of employment. The agreement does *not* provide for redemption in the event of disqualification, whether following the involuntary transfer to an unqualified person or the subsequent disqualification of a formerly qualified shareholder.[8]

Since the corporation did not provide in its articles, in its bylaws, or by private agreement for the repurchase or redemption of shares upon the disqualification of a shareholder, the statutory procedure set forth in § 16–11–13 governs the repurchase or redemption of shares in this case. That provision provides, in relevant part, as follows:

> [T]he professional corporation shall purchase the shares of a deceased shareholder or a shareholder no longer qualified to own shares in such corporation within 90 days after the death or disqualification of the shareholder, as the case may be. The price for such share[s] shall be their reasonable fair value as of the date of death or disqualification of the shareholder. If the corporation shall fail to purchase said shares by the end of said 90 days, then ... any disqualified shareholder may bring an action in ... district court ... for the enforcement of this provision.

Utah Code Ann. § 16–11–13 (1987). The statute further authorizes the court to order the liquidation of the corporation, *id.*, which was done in this case.

The judgment appealed from was properly entered and is affirmed.

DAVIDSON and GARFF, JJ., concur.

7. "Qualification" and "disqualification" refer, in this sense, to whether a shareholder is qualified to hold stock in the professional corporation, i.e., whether he or she is duly licensed as a member of the profession.

8. An unqualified transferee is treated the same as a once-qualified shareholder who becomes disqualified. *See Street v. Sugerman*, 202 So.2d 749, 751 (Fla.1967). *See also* Note 7, *supra.*