SWANN, Judge.
This appeal is from a final decree permanently enjoining the Sheriff of Dade County, Florida from conducting an execution sale of stock owned by attorneys in a professional service corporation.
The question which confronts us on appeal is whether stock owned by shareholders in a professional service corporation, Chapter 621, Florida Statutes, 1965, F.S.A., is exempt from levy and sale under execution, as a result of a judgment *58 obtained against some of the shareholders, by a “non-professional” judgment creditor.
Appellees contend that we must affirm, since appellants failed to provide us with a transcript of testimony taken upon a hearing for a temporary injunction, and say it was stipulated before the chancellor that this was to be considered as a part of the record at the last hearing. The record and final decree indicate that the chancellor made his ruling herein as a matter of law and public policy, and not on the basis of any disputed fact issues. We therefore proceed to a disposition of the case upon the merits.
Although ordinarily stock in non-professional corporations is subject to levy and sale under executions by judgment creditors,[1] the Professional Service Corporation Act, passed in 1961, provides as follows :
‡ % ^ ‡ i}í
“Limitation on issuance and transfer of stock. — No corporation organized under the provisions of this act may issue any of its capital stock to anyone other than an individual who is duly licensed or otherwise legally authorized to render the same specific professional services as those for which the corporation was incorporated. No shareholder of a corporation organized under this act shall enter into a voting trust agreement or any other type agreement vesting another person with the authority to exercise the voting power of any or all of his stock.” Section 621.09, Florida Statutes, F.S.A. (Emphasis supplied)
% ifc
“Alienation of shares, restriction.- — • No shareholder of a corporation organized under this act may sell or transfer his shares in such corporation except to another individual who is eligible to be a shareholder of such corporation, and such sale or transfer may be made only after the same shall have been approved, at a stockholders’ meeting specially called for such purpose, by such proportion, not less than a majority, of the outstanding stock as may be provided in the certificate of incorporation or in the bylaws. At such shareholders’ meeting the shares of stock held by the shareholder proposing to sell or transfer his shares may not be voted or counted for any purpose. * * * ” Section 621.11, Florida Statutes, F.S.A. (Emphasis supplied)
‡ ;j< ‡ ;j: ^ ‡
The chancellor interpreted the statute as a determination by the legislature precluding a non-professional judgment creditor from his right to levy upon stock in a professional service corporation and have it sold to satisfy his judgment.
Section 621.07, Florida Statutes, F.S.A., however, provides, in part:
“Nothing contained in this act shall be interpreted to abolish, repeal, modify, restrict or limit the law now in effect in this state applicable to the professional relationship and liabilities between the person furnishing the professional services and the person receiving such professional service and to the standards for professional conduct. Any officer, shareholder, agent or employee of a corporation organized under this act shall remain personally and fully liable and accountable for any negligent or wrongful acts or misconduct committed by him, or by any person under his direct supervision and control, while rendering professional service on behalf of the corporation to the person for whom such professional services were being rendered. * * * ”
The Supreme Court of Florida [2] has said the basic purpose of the Professional Service Corporation Act was to enable the various professionals to form corporations, so *59 as to qualify for “tax advantages” mentioned in the opinion. The Court stated:
* * * * * *
“ * * * If a means can be devised which preserves to the client and the public generally, all of the traditional obligations and responsibilities of the lawyer and at the same time enables the legal profession to obtain a benefit not otherwise available to it, we can find no objection to the proposal.
“ * * * The individual practitioner, whether a stockholder in a corporation or otherwise, will continue to be expected to abide by all of the Rules and Canons of professional ethics heretofore or hereafter required of him. The corporate entity as a method of doing business will not be permitted to protect the unfaithful or the unethical. As a matter of fact, the corporate entity itself will automatically come within the ambit of our jurisdiction in regard to discipline. In addition to the individual liability and responsibility of the stockholder, the corporate entity will be liable for the misprisions of its members to the extent of the corporate assets. * * * ” (at page 556) (Emphasis supplied)
* * * * * * *
“* * * [Bjecause of the privilege that is being made available to the lawyers of this State there will be increased responsibilities commensurate with the privilege. * * * ” (at page 557)
* * * * * *
In The Illinois Professional Association Act, 57 Nw.U.L.Rev. 334, it is said:
% íjí 5}t i}c
“As a matter of ethics and public relations, it is doubtful that the professional association should wish to escape liability under traditional forms. It certainly would not foster trust and confidence in a professional group to have the association say in effect, ‘We are limiting our liability to the public in order to realize personal gain through tax savings.’ The National Association of Accountants has forbidden accountants to form professional associations in order to avoid creation of such an image. Their view is that the ‘tax gimmick’ stigma has a detrimental effect on a relationship of trust and respect. * * * ” (at page 342).
‡ ‡ ‡ ‡ *
The fact that the corporation may not voluntarily “issue,” or the shareholders may not “sell or transfer” their stock voluntarily to a non-professional is not reason to prevent an execution and sale, by law, for a judgment creditor. Such a holding could afford professionals a shelter for their assets, which appears to be inconsistent with the spirit of the Act. We see no reason to carve out a judicial “no man’s land” for shareholders in a professional corporation which is not available to shareholders in non-professional groups. There is no specific language in the statute creating this exemption and we do not believe that we can, or should, create one for lawyers, or other professionals, by implication or judicial fiat.
We specifically refrain at this time from venturing any opinion as to the scope of the rights of a non-professional in such a stock interest if it should fall into his control after the levy and sale.
The judgment herein was obtained December 12, 1963; the professional association was formed January 10, 1964, and a levy was made about February 11, 1965. On February 5, 1965 the Charter of the corporation was amended to prevent a sale of the stock, except under Section 621.11, Florida Statutes, F.S.A., stating that the shares were not subject to sale and execution, and requiring the directors to amend the by laws to reflect these prohibitions. A self-created amendment of the charter attempting to restrict a levy and execution sale of such stock is improper, in our opin *60 ion. Sections 55.20, 55.25, and 621.14, Florida Statutes, F.S.A.
We therefore reverse and remand this cause for further action consistent herewith.
Reversed and remanded.

. Sections 55.20 and 55.25, Florida Statutes, F.S.A.

. In re The Florida Bar, Fla.1961, 133 So. 2d 554.