LAWSON, J.
Randall G. Lamore timely appeals his convictions by jury verdict for driving under the influence of alcohol, (“DUI”),[1] and driving while driver’s license permanently revoked, (“DWLR”).[2] Lamore contends that his convictions and sentences should be reversed because: (1) “both the DUI and the DWLR statutes under which [he] was convicted violate the due process clauses of both the United States and Florida Constitutions”; (2) the evidence was legally insufficient to sustain a conviction for DWLR as the State failed to prove that he was on a “highway”; (3) the State presented speculative and unfairly prejudicial testimony through cross-examination of the defense witness, Gene Biel, that was irreparably harmful to him; and (4) the State made an unfairly prejudicial and legally erroneous argument to the jury in closing that was irreparably harmful to him. As none of these arguments were preserved for appellate review, we affirm.[3]
On the evening of October 5, 2006, Gene Biel, Lamore’s neighbor, brought his car to Lamore, an automobile mechanic, for repair at Lamore’s shop. Biel expected that the work on his car would be completed that evening. As soon as he approached Lamore, however, he immediately noticed that Lamore had been drinking. Lamore continued drinking and became more intoxicated as the evening progressed. When it became clear that he would not be able to complete the repairs that evening, Lamore offered to drive Biel home in a car that, according to Lamore, belonged to his wife. Biel refused, offering that there was no way he would have even gotten into a bumper car with Lamore given his state of intoxication. Thereafter, Biel agreed to drive Lamore and himself home in the wife’s car. In route, however, Lamore became very belligerent, demanding that Biel stop at every convenience store they drove past, so that he could buy more beer. When Biel repeatedly refused, La-more became physically and verbally abusive. After Lamore slapped Biel, and then struck him harder in the head, Biel pulled over at a visitor’s center off of County Road 315, threw the car keys at Lamore, got out of the ear and proceeded to walk home. Lamore also got out of the car and stumbled after Biel. At some point, he returned to his car.
Approximately five hours later, at around 1:00 a.m., Deputy Joshua Brown noticed a white car with its interior lights on pulled off the side of County Road 315 near a visitor’s center that was closed. Upon investigation, Deputy Brown found Lamore seated in the driver’s seat with his feet on the driver’s side floorboard and his body slumped over onto the passenger side seat. Deputy Brown noticed that the car key was in the ignition and that there was vomit on the ground at the driver’s side door. He could also distinctly smell the presence of alcohol through the open driv *668 er’s side window. It took Deputy Brown several attempts to awaken Lamore, at which point he sat straight up (apparently in answer to the officer’s question about the time of morning), cranked on the engine, looked at the car clock, told the officer it was 1:10 a.m., and then turned off the car and promptly lay back down. La-more appeared intoxicated so that his normal faculties were impaired. Accordingly, Deputy Brown ordered him from the car with the purpose of conducting field sobriety tests.
Lamore refused to perform any tests, denied that he had consumed any alcohol that night, and further denied that the vomit outside of the car was his, notwithstanding that Deputy Brown also observed vomit on the inside of the door. Deputy Brown then arrested Lamore and transported him to jail. During the drive there, Lamore was belligerent and verbally abusive towards Deputy Brown, telling the officer it was his fault and that he was ruining Lamore’s life. At the jail, Lamore refused to take any test for the presence of alcohol and was charged with a misdemeanor offense for his refusal. Lamore was also charged with DUI and DWLR. Significantly, Florida’s DUI and DWLR statutes not only apply to a person “driving,” but also to persons in “actual physical control” of a vehicle. §§ 316.193(1), 322.01(15) & 322.341, Fla. Stat. (2006); see also, e.g., Griffin v. State, 457 So.2d 1070 (Fla. 2d DCA 1984); State, Dep’t of Highway Safety and Motor Vehicles v. Prue, 701 So.2d 637 (Fla. 2d DCA 1997); Baltrus v. State, 571 So.2d 75 (Fla. 4th DCA 1990); Fieselman v. State, 537 So.2d 603 (Fla. 3d DCA 1988), approved, 566 So.2d 768 (Fla.1990).
At trial, the State argued that it did not need to prove Lamore had been driving, and that the jury should convict because the evidence showed beyond a reasonable doubt that Lamore was in “actual physical control” of the vehicle while impaired, and after his license had been permanently revoked. Lamore argued that he was not in “actual physical control” of his vehicle as defined by the DUI and DWLR statutes, because he was passed out, incapable of operating a car. The jury rejected that argument, and convicted Lamore as charged. This appeal ensued.
Lamore initially contends that the DUI and DWLR statutes are unconstitutionally vague in using the phrase “actual physical control” and violate substantive due process (again, as applied to a person in who is in “actual physical control” of a vehicle, but not driving), because they lack a mens rea requirement in that they do not specifically require an intent to drive. Lamore suggests that this court could render the statutes constitutional by holding that an intent to drive is a requirement of the statutes.
We agree with the State that Lamore’s constitutional challenges are not preserved for appellate review. A constitutional challenge to the facial validity of a statute can be presented for the first time on appeal under the fundamental error exception. Trushin v. State, 425 So.2d 1126 (Fla.1982). However, a “constitutional application of a statute to a particular set of facts is another matter and must be raised at the trial level.” Id. at 1129-30; see also, Wright v. State, 920 So.2d 21, 23 (Fla. 4th DCA), rev. denied, 915 So.2d 1198 (Fla.2005). In this case, it is undisputed that Lamore raised no constitutional objection during the prosecution below. On appeal, although Lamore attempts to label his argument as a “facial” challenge to the statute, his real argument is that the statute is unconstitutional as applied to a person, like Lamore, who is found asleep in his car with his torso lying across the front *669 passenger’s seat.[4] He also argues other factual scenarios involving a defendant in actual physical control of a vehicle, but not driving, that might present constitutional concerns. Because these “as applied” challenges were not raised below, they were not preserved. Id.
As for Lamore’s remaining contention that the DUI and DWLR statutes violate substantive due process because they lack a mens rea requirement, the State correctly points out that these statutes are typical general intent statutes, which present no facial constitutional concern. Reynolds v. State, 842 So.2d 46, 51 (Fla.2002) (“That the statute contains a requirement of a general intent to commit an act that is obviously reasonably related to the harm sought to be avoided, rather than a more specific intent, is a choice for the Legislature.”); see also, Wright, 920 So.2d at 28-24 (the legislature has broad authority to determine intent requirements in defining crimes and courts must defer to the legislative determination on such matters as long as there is a rational basis for the legislative action).[5] In other words, placing oneself in actual physical control of a motor vehicle is generally an intentional act, which can be proscribed without violating due process. Id. Again, to the extent that Lamore attempts to argue that some additional, specific intent requirement should be added to the statute to address a constitutional concern as applied to the facts of this case, no such argument was preserved for review.
Next, Lamore contends that the evidence at trial was legally insufficient to sustain a conviction for DWLR because the State failed to prove that he was on a “highway” when in actual physical control of his car. The State correctly points out that this argument was not preserved for appellate review, as the defense made no motion for judgment of acquittal challenging the sufficiency of the evidence. F.B. v. State, 852 So.2d 226 (Fla.2003).
As his third point on appeal, La-more essentially contends -that the State presented speculative and unfairly prejudicial testimony through its cross-examination of defense witness Gene Biel, that also impermissibly exceeded the scope of defense counsel’s direct examination of Biel. During Biel’s cross-examination, however, the defense only made one objection to a single question. Specifically, the prosecutor asked Biel if Lamore thought that he was in a condition to drive. Defense counsel objected that the question called for speculation, and the prosecutor clarified that he was only asking Biel to relate what Lamore actually said. After this clarification, defense counsel did not pursue the original objection, and the defense made no further objections during the prosecu *670 tion’s entire questioning of Biel. Accordingly, none of the issues raised under this point were preserved for appeal. See, e.g., Graves v. State, 548 So.2d 801, 802 (Fla. 1st DCA 1989).
Finally, Lamore argues that the State made an unfairly prejudicial and legally erroneous argument to the jury in closing that was irreparably harmful to him. In making this argument, Lamore concedes that no objection was raised below. We have carefully reviewed the State’s entire closing argument, and find nothing approaching fundamental error in any of the prosecutor’s comments. See, e.g., Servis v. State, 855 So.2d 1190, 1193 (Fla. 5th DCA 2003) (“Fundamental error in closing arguments occurs when the prejudicial conduct in its collective import is so extensive that its influence pervades the trial, gravely impairing a calm and dispassionate consideration of the evidence and the merits by the jury.”) (quoting Silva v. Nightingale, 619 So.2d 4, 5 (Fla. 5th DCA 1993)).
Accordingly, we affirm Lamore’s convictions and sentences.
GRIFFIN and MONACO, JJ., concur.

. § 316.193(2)(b)3. Fla. Stat. (2006).

. § 322.341, Fla. Stat. (2006).

.We note that Lamore’s current counsel, who has done an exceptionally thorough and professional job on appeal, did not represent him below.

. We also note that other jurisdictions addressing the issue have consistently held that the phrase "actual physical control" is not unconstitutionally vague in similar contexts. See, e.g., United States v. McFarland, 369 F.Supp.2d 54, 61 (D.Me.2005) ("[A] line of cases has rejected vagueness challenges to actual physical control statutes.”) (citations omitted); State v. Schwalk, 430 N.W.2d 317, 319 (N.D.1988) ("Our research, however, reveals a line of cases from other jurisdictions consistently rejecting vagueness challenges to actual physical control statutes.”) (citations omitted).

. Clearly, there is a legitimate governmental interest in addressing the drunk driving problem by making it a crime to be in actual physical control of a vehicle while impaired— thereby allowing an intoxicated person to be apprehended before he "strikes;" deterring those who have been drinking from getting into their vehicles, except as passengers; and protecting the public from the danger of an impaired person who places himself behind the wheel and could at any time and with little difficulty start the car and drive away.