# Third District Court of Appeal

## State of Florida

Opinion filed November 27, 2024.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D24-0334
Lower Tribunal No. 22-23001
_____

**J.B. Harris, P.A., et al.,**
Appellants,

vs.

**Virage Capital Management LP, et al.,**
Appellees.


An Appeal from a non-final order from the Circuit Court for Miami-Dade County, Tanya Brinkley, Judge.

The Law Offices of Jonathan B. Harris, P.A., and Jonathan B. Harris, for appellants.

Gelber, Schachter & Greenberg, P.A., and Gerald E. Greenberg and Daniel R. Walsh; Roniel Rodriguez IV, P.A., and Roniel Rodriguez IV, for appellees.

Before FERNANDEZ, BOKOR and GOODEN, JJ.

GOODEN, J.

Jonathan Beryl Harris, the Law Offices of J.B. Harris, PA, J.B. Harris, PA, and the Law Offices of Jonathan B. Harris, PA appeal a non-final order granting a judgment creditor's—a third-party litigation financing company—motion to turnover Harris' stock interest in his law firms.  We have jurisdiction. Fla. R. App. P. 9.130(a)(3)(C)(ii).

## I.

Jonathan Beryl Harris and Phillip T. Howard entered into a Confidential Settlement Release Agreement and Joint Prosecution and Fee Sharing Agreement involving certain Engle[1]-progeny and Broin[2] tobacco cases. Harris agreed to pursue these personal injury claims on behalf of individual clients in exchange for a split of recovered legal fees.

Virage is a third-party litigation financing company.  Virage issued Howard a line of credit for approximately $30,000,000 and was a third-party signatory to the Confidential Settlement Release Agreement.  As a result, Virage held a security interest in Howard's share of fees which were recovered under the Joint Prosecution and Fee Sharing Agreement.

---

[1] Engle v. Liggett Grp., Inc., 945 So. 2d 1246 (Fla. 2006).

[2] Broin v. Philip Morris Cos. Inc., 641 So. 2d 888 (Fla. 3d DCA 1994); Philip Morris, Inc. v. French, 897 So. 2d 480 (Fla. 3d DCA 2004).

The FBI subsequently opened an investigation into Howard for racketeering (RICO) violations. Specifically, Howard was accused of running a ponzi scheme to defraud his clients, former NFL players suffering from chronic traumatic encephalopathy (CTE), who were seeking compensation from the NFL's injury fund. Howard was convicted and is serving a fourteen-year sentence. He also was permanently disbarred by the Florida Supreme Court. See Florida Bar v. Howard, SC19-1570, 2022 WL 872176, at *1 (Fla. Mar. 24, 2022).

During this period, Howard executed an Assignment of Benefits for Creditor in favor of Virage, assigning his interest in the proceeds from the Joint Prosecution and Fee Sharing Agreement. Thereafter, Virage, standing in the shoes of Howard, filed a declaratory judgment action against Harris in Texas.

After a three-day trial, the Texas court entered a final declaratory judgment against Harris. Relevant here, the judgment specifies that Virage is "entitled to a valid lien on 40% of the gross fees across all the cases." It also ordered Harris to pay Virage $759,568.50 in attorney's fees, costs, and interest. Harris appealed the judgment.

In December 2022, Virage domesticated the foreign judgment in Florida. Virage sought issuance of a writ of garnishment. It is undisputed

3

that the only assets in these law firms are the funds from a confidential, multi-million-dollar global settlement of 54 Engle-progeny cases and 43 Broin cases.

To avoid enforcement, Harris sought a temporary injunction, which was denied for want of an underlying claim. Harris next moved to stay the proceedings, which was, likewise, denied because: (1) Harris failed to satisfy the prerequisites for a stay; (2) the Florida action was an enforcement proceeding, which precluded any inquiry into the merits of the foreign judgment; and (3) Florida law authorizes the enforcement of a judgment even if it is currently being appealed.

Virage then moved to compel issuance and turnover of Harris' stock in his law firms. Because Harris had not certified his stock interest in his law firms, Virage sought an order directing the sheriff to sell Harris' stock interest and apply any proceeds therefrom to the outstanding foreign judgment.

The trial court heard argument from the parties at a non-evidentiary hearing. Harris was advised that he could stop the sale if he satisfied the debt or posted bond. Instead of doing so, Harris maintained that he was entitled to an evidentiary hearing on the matter and requested a ninety-day stay. When asked why he had not posted bond in Florida to avoid the sale, Harris was unable to provide any valid legal basis which would excuse him

from so doing.  Notwithstanding, Virage did not oppose Harris seeking alternative methods of posting a bond, agreed to waive any bond interest, and agreed to include a ninety-day waiting period prior to the sale of the stock to allow Harris an opportunity to either post bond or obtain a decision from the Texas court.

Ultimately, the trial court granted Virage's motion to compel and ordered Harris to turnover his stock in the law firms.  It cited sections 56.061 and 678.1121(5), Florida Statutes, and Street v. Sugarman, 202 So. 2d 749 (Fla. 1967) in support.  Harris was again advised that he could cancel the sale at any time upon satisfaction of the judgment or by posting bond.  Harris did neither.  Instead, he filed the instant appeal.

## II.

On appeal, Harris asserts numerous arguments attacking the forced turnover of the stock in his law practices.  The theme running through these arguments is that this case is somehow unique because the value of the stock is comprised of Engle-progeny and Broin settlement funds.  We reject Harris' arguments and attempts to distinguish binding statutes and precedent simply because of the types of cases the law firm handles.[3]  We affirm in all

---

[3] We further reject Harris' as-applied constitutional challenge to sections 56.061 and 678.1121, Florida Statutes.  Harris did not make this specific argument below.  As a result, this argument is not preserved for review, and

respects and write to explain the binding statutes and precedent applicable to this case.

**A.**

Since 1889, Florida law has provided judgment creditors a remedy against a judgment debtor's stock. § 1, Ch. 3917, Laws of Fla. (1889) ("That shares of stock in any corporation incorporated by the laws of this State shall be subject to levy of attachments and executions, and to sale under executions on judgments or decrees of any court in this State."). In its present form, section 56.061, Florida Statutes, provides:

> Lands and tenements, goods and chattels, equities of redemption in real and personal property, and stock in corporations, shall be subject to levy and sale under execution. Likewise, the interest in personal property in possession of a vendee under a retained title contract or conditional sale contract shall be subject to levy and sale under execution to satisfy a judgment against the vendee. This shall be done by making the levy on such personal property.

§ 56.061, Fla. Stat. (2024). This section lists what types of property can be levied and executed upon, and explicitly lists stock. See generally Klauber

---

we cannot address it as a matter of first instance. See Trushin v. State, 425 So. 2d 1126, 1129 (Fla. 1982); Lamore v. State, 983 So. 2d 665, 668 (Fla. 5th DCA 2008) ("A constitutional challenge to the facial validity of a statute can be presented for the first time on appeal under the fundamental error exception. However, a 'constitutional application of a statute to a particular set of facts is another matter and must be raised at the trial level.'") (internal citation omitted).

6

v. First Fed. Bank of Florida, 198 So. 3d 762, 765 (Fla. 2d DCA 2016) ("Corporate stock can be property subject to execution."); Icardi v. Nat'l Equip. Rental, Inc., 378 So. 2d 113, 114 (Fla. 5th DCA 1980) (holding that stock owned by appellant in two corporations was subject to levy).

In 1965, Florida adopted the Uniform Commercial Code. Ch. 65-254, Laws of Fla. (1965). The current version was enacted in 1998. Ch. 98-11, Laws of Fla. (1998). As part of this revision, it entitled a judgment creditor aid from a court in executing on certificated and uncertificated securities. This procedure is outlined in section 678.1121, Florida Statutes. In pertinent part, it states:

> A creditor whose debtor is the owner of a certificated security, uncertificated security, or security entitlement is entitled to aid from a court of competent jurisdiction, by injunction or otherwise, in reaching the certificated security, uncertificated security, or security entitlement or in satisfying the claim by means allowed at law or in equity in regard to property that cannot readily be reached by other legal process.

§ 678.1121(5), Fla. Stat. (2024).

Under these two sections, a trial court has the authority to levy and order execution of stock. See Schanck v. Gayhart, 245 So. 3d 970, 975 (Fla. 1st DCA 2018).

Notably, neither of these sections—nor each Chapter—provides for an exception for law firms, its stock, or for the types of cases the law firm

7

handles.  Where the Legislature did not expressly provide an exception in the text of the statute, we cannot read an exception into it.  <u>State v. Town of Forest Park in Hillsborough Cty.</u>, 100 So. 735, 736 (Fla. 1924); Antonin Scalia & Bryan Garner, <u>Reading Law: The Interpretation of Legal Texts</u> 93 (2012).  It would transcend our judicial power causing us to rewrite the statute.  This would violate the separation of the powers set forth in the Florida Constitution.  Art. II, § 3, Fla. Const.

We do, however, read these statutes together with the more specific statutes discussed below.  Scalia & Garner, <u>supra</u>, 167.

**B**.

Historically, lawyers were not allowed to practice law through a corporation.  <u>State Bd. of Accountancy v. Eber</u>, 149 So. 2d 81, 82 (Fla. 1st DCA 1963).  That changed in 1961 when the Florida Legislature enacted the Professional Services Corporations Act.  <u>See</u> Ch. 61-64, Laws of Fla. (1961).  The text of the statutes enacted at that time are like those still in effect.  Provisions in the 1961 Act pertinent to our analysis are:

> No corporation organized under the provisions of this Act may issue any of its capital stock to anyone other than an individual who is duly licensed or otherwise legally authorized to render the same specific professional services as those for which the corporation was incorporated.  No shareholder of a corporation organized under this Act shall enter into a voting trust agreement or any other type agreement vesting another person with the authority to exercise the voting power of any or all of his stock.

8

§ 9, Ch. 61-64, Laws of Fla. (1961).  Compare § 621.09(1), Fla. Stat. (2024).

> No shareholder of a corporation organized under this Act may sell or transfer his shares in such corporation except to another individual who is eligible to be a shareholder of such corporation, and such sale or transfer may be made only after the same shall have been approved, at a stock holders' meeting specially called for such purpose, by such proportion, not less than a majority, of the outstanding stock as may be provided in the certificate of incorporation or in the by laws. . . .

§ 11, Ch. 61-64, Laws of Fla. (1961).  Compare § 621.11(1), Fla. Stat. (2024).

> The provisions of this Act shall not be construed as repealing, modifying or restricting the applicable provisions of law relating to incorporations, sales of securities or regulating the several professions enumerated in this Act except in so far as such laws conflict with the provisions of this Act.

§ 15, Ch. 61-64, Laws of Fla. (1961).  Compare § 621.14, Fla. Stat. (2024).

Shortly thereafter, the Florida Supreme Court allowed lawyers to create such professional corporations.  In re Florida Bar, 133 So. 2d 554, 556–57 (Fla. 1961).  It explained:

> As we read Chapter 61–64, . . . the highly personal obligation of the lawyer to his client is in no way adversely affected.  The individual practitioner, whether a stockholder in a corporation or otherwise, will continue to be expected to abide by all of the Rules and Canons of professional ethics heretofore or hereafter required of him.  The corporate entity as a method of doing business will not be permitted to protect the unfaithful or the unethical.  As a matter of fact, the corporate entity itself will automatically come within the ambit of our jurisdiction in regard to discipline. In addition to the individual liability and responsibility of the stockholder, the corporate entity will be liable for the misprisions of its members to the extent of the corporate assets.

. . . . The members will be associated together as stockholders. They will have as their objective the conduct of the affairs of the corporate entity with a division of the profits. There will be continuity of life and centralization of management. There will be liability for corporate debts to the limit of the corporate assets. Finally, there will be a modified form of transferability of interests. There is some limitation on transferability by the requirement which restricts the transfer of stock in a professional service corporation to one who is a member of the profession and subject to the privilege of remaining stockholders to acquire the stock offered for transfer.

Id. This is implemented through the Rules Regulating the Florida Bar. Id. at 557. See generally R. Regulating Fla. Bar 4-8.6 (2024); State v. Dawson, 290 So. 2d 79, 82 (Fla. 1st DCA 1974) ("A study of the background and history of the Professional Service Corporation Act of Florida establishes beyond doubt that it was enacted for the purpose of providing tax advantages to those in the learned professions that otherwise would be unavailable to them. It is also evident that everything essential was done by the legislature and the sponsors of such legislation to preserve the non-corporate status of the lawyer coming under its provisions and all the traditional and historic attorney-client responsibilities and privileges.").

This history is pertinent to our examination of Street v. Sugarman, 202 So. 2d 749 (Fla. 1967). Because it is in this legal backdrop—and a statutory framework that still exists today—that the Florida Supreme Court decided the case.

In _Street_, petitioners Street and Greenfield were officers and stockholders in a law firm—a professional association formed under Chapter 621 in 1964. They owned 90% of the stock in the law firm. _Id._ at 750. The respondents were judgment creditors of Street and Greenfield—not the law firm. _Id._ Respondents levied the stock of the law firm. _Id._ Petitioners filed suit to enjoin the sale of their law firm stock, and the trial court entered a permanent injunction. _Id._ The trial court found that, as a matter of law and public policy, a non-professional judgment creditor could not levy stock of a professional organization to satisfy the judgment. _Id._

On appeal, our Court disagreed and reversed. _Sugarman v. Street_, 198 So. 2d 57, 59 (Fla. 3d DCA 1967). We explained:

> The fact that the corporation may not voluntarily 'issue, or the shareholders may not 'sell or transfer' their stock voluntarily to a non-professional is not reason to prevent an execution and sale, by law, for a judgment creditor. Such a holding could afford professionals a shelter for their assets, which appears to be inconsistent with the spirit of the Act. We see no reason to carve out a judicial 'no man's land' for shareholders in a professional corporation which is not available to shareholders in non-professional groups. There is no specific language in the statute creating this exemption and we do not believe that we can, or should, create one for lawyers, or other professionals, by implication or judicial fiat.

_Id._ We then certified a question of great public importance:

> Whether stock owned by attorney-shareholders in a professional service corporation is exempt from levy and sale, under

11

execution, as a result of a judgment against some of the shareholders, by a non-professional judgment creditor.

Street, 202 So. 2d at 750.

The Florida Supreme Court agreed with our Court and answered the certified question in the negative. Id. It explained:

The privilege of incorporation was most definitely not created or extended in order that those availing themselves of the benefits could be cloaked with an immunity inimical to legal order and public interest. Thus, it is our judgment that Chapter 621, Florida Statutes, F.S.A., does not serve to prevent an execution and sale, by law, of shares of stock in a professional service corporation for satisfaction of a judgment creditor.

Id. at 751.[4]

This principle has been applied in other contexts. See, e.g., Brody v. Poliakoff, 689 So. 2d 441, 442 (Fla. 3d DCA 1997) (holding ex-wife could execute on ex-husband's law firm stock for payment of child support and alimony). Indeed, it is in line with the general rule "that where one has any interest in property which he may alien or assign, that interest, whether legal or equitable, is liable for the payment of his debts." Bradshaw v. Am. Advent Christian Home & Orphanage, 199 So. 329, 332 (Fla. 1940).

---

[4] Other states have reached similar conclusions. See, e.g., Gulf Mortg. & Realty Investments v. Alten, 422 A.2d 1090, 1097 (Pa. 1980); Amin v. Adams, 0282-94-2, 1995 WL 293043, at *1 (Va. Ct. App. May 16, 1995).

We are bound by <u>Street</u>. <u>See</u> <u>Hoffman v. Jones</u>, 280 So. 2d 431, 434 (Fla. 1973). Indeed, the same statutory framework existed in 1964 that does today. As a result, Virage—as the judgment creditor—is entitled to execution and levy of Harris' law firm stock.

**III.**

With the rise of the cost of litigation and the increasing prevalence of third-party litigation financing, this situation may occur with more frequency. Lawyers must be cognizant of the consequences and potential downside of these agreements. While Harris raises many valid concerns, these are beyond the scope of our judicial review as this case solely concerns whether the trial court properly ordered execution of a valid, domesticated judgment.

We find that the trial court did. Reading the above statutes and <u>Street</u> together, there is no doubt that the trial court had authority to order the turnover of Harris' stock in his law firms. It followed binding precedent and applicable Florida law. Accordingly, we affirm the order on appeal.

Affirmed.